Wardlaw, J.
delivered the opinion of the Court.
If the jury found that sheriff Harley delivered the negroes to Williams unconditionally, then, upon the authority of Towles v. Turner, and the general Jaw of sales, the contract of sale, made in May, 1842, when Williams was the purchaser, became complete by the delivery; and afterwards, the sheriff had no right to reseize and resell, because the purchaser had not paid the price. All this was declared to be law under the statutory provisions which regulated sheriff’s sales in 1836, when the case of Towles v. Turner was decided : it is more plainly so, under the 58th section of the sheriff’s Act of 1839, which prevailed when the sale, now in question, was made. By an unconditional delivery, a sheriff acknowledges that the payment which ought to precede delivery has been made; he may afterwards, by rebutting the presumption which the act of delivery raises, recover, in a case between him and the purchaser, the price for which he may have chosen to extend credit to the purchaser; but neither he, nor the creditors for whom he has sold, can after-wards disavow his act, or say that his sale was incomplete and ineffectual. The power to enforce the compliance of the purchaser with the terms of sale, by reselling at his risk, which the statute gives to a sheriff, is not a power to rescind an executed contract, but a summary means of ascertaining, at the cost of the delinquent, the damages which have resulted from non-performance of an executory one. The sheriff may have violated his duty, by delivering unconditionally, in reliance upon the promise of the purchaser, instead of retaining the possession until the cash was paid, or annexing a condition to his delivery, (if that were proper;) but the effect of such wrongful or improvident conduct, is to make himself liable to creditors, not to impair the title which he has transferred to the purchaser.
In súpport of the fact of unconditional delivery, the testimony wás strong. Sheriff Harley himself has testified that there was no delivery, (in which he seems to have been mis *220 taken,) not that, any condition was annexed 'to the delivery; there was no direct testimony at all concerning any condition : the sheriff did not resell on the same day, or the next succeeding sale day, as by the Act of 1839 he was required to do, in the absence of any direction from a plaintiff in execution : no such direction was shown : Williams was, at the time of his purchase, owner of the oldest execution against Pardue, (Landrum v. Pardue,) about $400, and of the third execution, Terry v. Pardue, and having bid $800, did, in effect, pay all of his bid except about $200, which was applicable to a second and intermediate execution: and the existence of any condition can only be established by inference from the probability that the sheriff would not have completed the sale without such security as would arise from an understanding that the title should not pass to the bidder by the delivery, until he paid the price, so that if the amount of the intermediate execution should not be paid within some prescribed time, the sheriff should be at liberty to resell.— The force of the inference, thus suggested, would vary according to the degree of credit which Williams might be supposed, then, to have enjoyed, and the degree of care with which sheriff Harley might be supposed to have discharged his duty. This Court thinks the inference is not strong enough to establish a fact which must be shown by him who would claim advantage from its existence — a fact so contrary to general policy as a condition annexed to a sheriff’s sale, without the actual consent of the parties interested in the sale, against the express directions of statute, and to the great risk of all who may be misled by such condition.— Some of the Court, then, think that it might be safe to assume that the fact of unconditional delivery was found by the jury, and that the whole case is decided by that.
Alternative instructions were, however, given to the jury, in which it was held, that assuming the delivery to have been made subject to the condition that, the title should not pass to Williams úntil the price was paid ; Cochran, although if he had notice of the condition, he would occupy no better situation than Williams, is protected against the condition if he was a subsequent bona fide purchaser without notice.— The jury may have found the condition, but not the notice ; and the propriety of the instructions is questioned.
It is to be noticed that Cochran had been a bona fide purchaser before the sheriff’s sale to Williams: he, however, after that sale, received the negroes again from Williams, in confirmation of his former purchase, and in satisfaction of the demand which he would otherwise have had against Williams for failure of the title first conveyed to him. Had he, when he received the negroes a second time, notice of the condition, assumed to have been annexed to the delivery made to Williams by the sheriff?
*221 It is further to be noticed that all the sales spoken of in this case, took place before the passing of the Act of 1843, “ to ^ amend the law in relation to recording mortgages,” &c. and the 3d section of which makes void as to subsequent creditors and purchasers for valuable consideration without notice, every verbal agreement, whereby the vendor of personal property, who has parted with the possession, reserves to himself any interest in the same.
The long delay of the sheriff, and various other circumstances which have been brought to the view of the Court, might well have been insisted upon as badges of fraud, calculated to show that the alleged condition was fraudulent as to Cochran, if the matter of fraud had been submitted as a question of fact to be decided by the jury. But we must understand the instructions as declaring that per se, as matter of law, such a condition was, before the Act of 1843, void as to a subsequent purchaser without notice.
Now the defendant is correct in saying that the plea of purchaser for valuable consideration without notice, is a de-fence peculiar to a Court of Equity, and even in that Court will not avail against a legal title ; that, at law, the question is, who has the legal title,' without regard to equities, equal or unequal. Of all this, the case before us presents an instance in this, — that the defendant, Roundtree, although he may be a purchaser for valuable consideration, without notice of Cochran’s title, has against that title, if it be a valid legal one, no better defence than the sheriff from whom he purchased. But sometimes want of notice, attending a purchase, is looked to at law, not as one of the circumstances which make a case to rebut an equity, but as a fact which gives validity to a legal title. Thus it is in all questions of notice which arise under the registry Acts — in all cases involving the validity of the title of a purchaser, from one who has received a voluntary conveyance, and in cases where purchasers or creditors insist upon the inferences which are usually drawn from possession remaining with a vendor. And thus in the case before us, Cochran insists that his ignorance of the condition exempts him from its operation, even although it may have been binding upon Williams : in effect that the law, from considerations pf policy, will, in this case, as in others, enable a seller to transfer to an innocent purchaser a higher right than he himself enjoyed. If this be so, Cochran is prior in tempore, even if there should be nothing in Roundtree’s situation which subjects him, as well as the sheriff, to the maxim, that where one of two innocent persons must suffer, he shall endure the loss who has contributed to occasion it.
The utmost that the defendant can ask is, that it should be conceded that the sheriff had the same right to annex a *222 verbal condition to his delivery after a contract of sale, as a private person had.
Rice L. R. 421.
The contract between the sheriff and Williams, being for the sale of goods for a price much above £ 10, would have been void, under the statute of frauds, without some note or memorandum in writing, some acceptance of part by the purchaser, or some payment of earnest. If a note or memorandum made it binding, that must have contained every material stipulation, and could not have been added to by parol. If the acceptance by the purchaser be allowed to have the same effect as a note or memorandum, it seems reasonable to hold that the delivery, leading to the acceptance, should be always construed to be unconditional, if the condition be not verified by that note or memorandum for which the acceptance is a substitute. It may be conceded, however, that nothing in the statute of frauds, or in the Act concerning sheriff’s sales, or in the rules of evidence, prevented the alleged condition, verbally annexed to the sheriff’s delivery, from binding Williams. Does it bind Cochran ? In various cases, prior to 1843, it was held that such a verbal condition would be good between the parties to it, and that a subsisting creditor of the vendee was bound as the vendee himself was. But in the case of Sims v. Bennett, (where all the previous cases were examined, and an elaborate opinion of a divided Court pronounced by Judge Earle,) the question as to subsequent creditors and subsequent purchasers, without notice, was expressly reserved. The inclination of Judge Earle’s mind, evidently, was to hold that such verbal stipulation would be good against subsequent creditors without notice, unless it were impeached by long continuance of the possession in the vendee, or other badges of unfairness, to be judged of by a jury. As to subsequent purchasers without notice, he entered into no reasoning, and scarcely intimated an opinion. Looking to the dangerous nature of such verbal stipulations, since that time guarded against by the Act of 1843, which amounts to a legislative declaration concerning a debated point of law; to the policy which forbids a seller from availing himself of a secret condition, annexed to a visible transaction that appears to be unconditional, whereby an innocent purchaser has been deluded ; and to the great advantage of having an inflexible rule of law rather than the uncertain determination of a jury; this Court is unwilling to go beyond the .case of Sims v. Bennett. Stopping where that stopped, we hold that although the condition may have been binding on Williams, it did not bind a subsequent bona fide purchaser without notice ; and that the instructions given to the jury were altogether right.
The motion is dismissed.
The whole Court concurred.